**STEVENS et al. v. IVERSON.**

No. 26756. March 16, 1937.

Harry G. Davis and Thomas J. Wiley, for plaintiffs in error.

Jno. W. Porter, for defendant in error.

WELCH, J. Plaintiffs in error were defendants, and defendant in error was plaintiff in the trial court, and they will be herein referred to as they appeared there.

Plaintiff sought and obtained an injunction prohibiting the defendants from interfering with his removing certain pipes and casing from two gas wells located upon the defendants' property.

The two wells were located upon adjoining sections, and were drilled under separate leases. One, known as the "Pace Lease," was executed in October, 1920. The other, known as the "Wilcox Lease," was executed in 1915. Each lease was for a period of five years and as long thereafter as oil or gas was produced in paying quantities. Each of the leases provided that the lessee should have the right at any time to remove all machinery and fixtures placed on said premises, including the right to withdraw and remove casing. Both of the leases became the property of one John M. Foltz, who sold the casing in the two wells to the plaintiff a short time before the commencement of this action in August, 1934. Both of the wells were drilled in conformity with the terms of the leases, and both of same produced gas, but no oil.

It is the contention of the defendants that the leases had expired by their own terms several years prior to 1934, when it was sought to remove the casing, and that for that reason the lessees or assigns had forfeited the right to remove such casing by failing to remove same within a reasonable time after the expiration of the leases.

In support of such contention they cite Stephens v. Lundy, 172 Okla. 79, 44 P. (2d) 843, wherein this court held:

"Where an oil and gas lease authorized the lessee to remove his fixtures 'at any time,' such right was not unlimited as to time, but the lessee was only entitled to remove same within a reasonable time after expiration of the lease; what is a reasonable time is to be determined from all the facts and circumstances of each particular case."

And the cases of Sanders v. Davis, 79 Okla. 253, 192 P. 694; Rennie v. Red Star Oil Co., 78 Okla. 208, 190 P. 391, and Tyler v. Wilhite, 97 Okla. 159, 222 P. 997.

The question whether the leases had expired is discussed at some length in the briefs. Authorities are cited which deal with the rights of the lessee to continue to hold the leases for further exploration for oil and gas, with all of the rights and privileges granted therein. For the purpose of this case we will assume that the leases had expired by their own terms in so far as those rights are concerned, and we deem it unnecessary to further discuss that point.

Our former decisions make it plain that when the lease expires, if it contains such provision for removal of casing, that right continues for a reasonable time.

How long such provision remains in force is dependent upon the facts in each case. In determining the length of time such clause remains in force, the question of whether the lessee has abandoned the casing is a proper subject of inquiry. Likewise, the question of forfeiture of the property by inaction on the part of the lessee, to be determined under the principles of equity, must be given consideration, for it is properly held that the lessee cannot hold the premises indefinitely for the purpose of exercising his contract right to remove the casing, etc.

And so the question before the trial court, and here, was whether the lessee and his assigns had abandoned the personal property, or whether he acted within a reasonable time, under all the facts and circumstances, in his efforts to remove the property from the premises.

Our review of the trial court's judgment here is governed by the rule announced in Pauls Valley Nat. Bank v. Foss, 99 Okla. 178, 226 P. 567, as follows:

"Where actions of purely equitable cognizance are tried to the court without the intervention of a jury, if the finding of the court is not clearly against the weight of the evidence and comes within the principles of equity, the decision of the lower court should be affirmed."

And with that rule in mind we examined the record.

The well on the Pace lease, although hav-

ing produced some gas, was shut in in October, 1925. The well on the Wilcox lease continued to produce gas which was sold by the lessee for commercial purposes as late as 1930. And this well was producing gas up until the time of the attempted removal of the casing, which was used for domestic purposes by the lessors and other families, some of whom were tenants of the lessors. The gas had been produced in the two wells during the original terms of the leases. Accepting the defendants' contention that the lessee's right to hold under the lease expired in 1925 as to the Pace lease, and in 1930 as to the Wilcox lease, we nevertheless find that the evidence amply supports the conclusion that the lessee did not intend to abandon the casing. The lessee, with the full knowledge and acquiescence on the part of the defendants, continued in possession of the premises and continued to exercise the care, possession, and control of both wells. Without objection on defendants' part, the lessee swabbed both of the wells in 1930, and again in 1932. During all of said time, and up to within a very few months prior to the sale of the casing to plaintiff here, the lessee procured the wells to be preserved by frequently having the same "blown off."

The evidence along this line readily leads to the conclusion that the defendants desired further development of the property and desired the leaving of the casing in the wells pending possible further development and for the further purpose of thereby enabling defendants to continue the use of gas without cost. During such period the evidence reflects that all of the parties were proceeding harmoniously, and with an apparent mutual purpose, and as late as 1930 the lessors sought to induce the lessee to proceed with further explorations by importuning him to take a new lease upon the property. There is no evidence of any character which would indicate that the act of plaintiff in leaving the casing in the wells displeased or inconvenienced the defendants, or was considered as a trespass upon the property, but, on the other hand, the evidence clearly indicates that the lessee's acts in this respect at all times inured to the benefit of the defendants and might be considered to have been induced by them. The casing having been left in the wells with the clear consent, acquiescence, and inducement on the part of the defendants, and they having at all times been benefited thereby by reason of the immediate use of gas from one of the wells, and the apparent anticipation of probable future benefits from

the other well, we are unable to conceive of any equitable considerations which would appear to declare a forfeiture of the lessee's right to remove the casing or estop him from so doing. The evidence here would well support the conclusion that the casing was left in the wells by the lessee primarily for the benefit and convenience of the lessors; and it does not comport with our ideas of equity that his acts of consideration should be held to operate as a forfeiture of valuable contractual and property rights.

We note the defendants' suggestion that the plaintiff should not be permitted to proceed in equity in that the only question involved here is that of the ownership of the property. What we have already said would appear to dispose of the question, inasmuch as our conclusion in this case concerns the plaintiff's contractual right to go upon the premises and remove certain of his property placed thereon by him as lessee.

The conclusion of the trial court that the lessee did not abandon the casing, and that he did not forfeit his contract right to remove the same, or is not estopped therefrom by the lapse of time, is not against the clear weight of the evidence, but is amply supported thereby; the judgment is therefore affirmed.

OSBORN, C. J., and RILEY, PHELPS, and HURST, JJ., concur.