2010 OK CIV APP 23

**O'BRIEN OIL, L.L.C., Plaintiff/Appellee,**

v.

**John W. NORMAN; Cecilia A. Norman; Randall A. Mock, Trustee of the Norman Children 1985 Irrevocable Trust, Defendants/Appellants.**

**No. 107001.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 22, 2010.

Jeff L. Hirzel, William, Hirzel & Hurst, Guthrie, OK, James R. Waldo, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, OK, for Appellants.

Tim W. Green, Guthrie, OK, for Appellee.

LARRY JOPLIN, Judge.

¶ 1 Defendants/Appellants, John W. Norman, Cecilia A. Norman, and Randall A. Mock, Trustee of the Norman Children 1985 Irrevocable Trust (Landowners), seek review of the trial court's order granting judgment to Plaintiff/Appellee, O'Brien Oil, L.L.C. (Lessee), on its request for a judgment declaring its right to use an abandoned wellbore located on Landowners' surface estate. In this accelerated review proceeding, Landowners challenge the order as affected by errors of both law and fact.

¶ 2 In 1983, a prior lessee of minerals underlying a 40 acre drilling and spacing unit in Section 33, T16N, R3W, I.M., Logan County, Oklahoma, drilled the Theodore No. 1 well in the SE/4 SE/4 of Section 33, and set casing to a depth of four hundred forty feet. The lessee subsequently abandoned and plugged the well-bore with cement, leaving the casing in place. In 1989, Landowners acquired the surface estate.

¶ 3 Lessee now holds valid leases of the minerals underlying Landowners' surface estate. Lessee proposed additional mineral exploration by re-entry through the existing plugged casing of the Theodore No. 1 well, and offered Landowners compensation for both use of the wellbore and surface damages. When Landowners rejected Lessee's proposal, Lessee applied for and obtained from the Oklahoma Corporation Commission a Permit to Re–Enter the plugged well. When Landowners objected to Lessee's operations, Lessee commenced the instant action for declaratory judgment.

¶ 4 Lessee subsequently filed a motion for summary judgment, and argued that its permit to re-enter specifically allowed its use of the plugged Theodore No. 1 wellbore. Lessee also argued that, by virtue of the existing order of the Corporation Commission establishing a 40–acre drilling and spacing unit, and location of the plugged Theodore No. 1 well at a permitted place within the drilling and spacing unit, it was entitled to use of so much of the surface estate, including the abandoned Theodore No. 1 wellbore, as was reasonable for mineral exploration.

¶ 5 Landowners objected and filed a counter-motion for summary judgment. Landowners asserted that they owned the abandoned Theodore No. 1 wellbore and casing, and that Lessee obtained its Permit to Re-enter without notice to them. Landowners further asserted that their surface estate (including the wellbore and casing) was not subject to Lessee's private taking without their consent, or that, at the very least, Lessee should be required to compensate them for its use. Landowners also set up a counterclaim against Lessee for surface damages, and alleged the existence of another action pending between the same parties concerning the same surface damages.

¶ 6 Upon consideration of the parties' submissions and arguments, the trial court granted the motion for summary judgment of Lessee, denied the motion for summary judgment of Landowners, and dismissed the remaining claims, holding:

1. The Corporation Commission of the State of Oklahoma has oversight and regulatory authority of the drilling and plugging of oil and gas wells in the State of Oklahoma.

2. The Theodore No. 1 well was plugged pursuant to regulations of the Corporation Commission and its official Plugging Record entered on June 11, 1983.

3. Upon plugging and abandonment of the Theodore No. 1 well the 441 feet of surface casing was affixed to and became a part of the surface realty.

4. The Corporation Commission has issued to Plaintiff its "Permit to Re-enter" the Theodore No. 1 well and to utilize the bore hole in its drilling operations to a depth of 6,350 feet, including the 441 feet of surface casing.

5. The owners of the oil, gas and other mineral rights have the right to use so much of the surface realty as is reasonably necessary to explore, produce and market such oil, gas and other minerals.

6. The use of the bore hole of the Theodore No. 1 well in Plaintiff's oil and gas operations reasonably requires the use of the 441 feet of surface casing which is a part of the surface realty.

7. The matters of surface damages, if any, by virtue of Plaintiff's operations on the land are better addressed in case number CV–2008–17 brought under the Surface Damages Act pending in this court and Defendants' Motion to Dismiss Plaintiff's second cause of action in this case should be sustained, the second cause of action dismissed and Defendants' counterclaim in this case dismissed.

Landowners appeal, and the matter stands submitted on the trial court record.[1]

### I. Standard of Review

¶ 7 "Summary relief issues stand before us for *de novo* review[,] [and] [a]ll facts and inferences must be viewed in the light most favorable to the non-movant." *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 106–107. (Footnotes omitted.) "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lowery v. Echostar Satellite Corp.*,

2007 OK 38, ¶ 11, 160 P.3d 959, 963–964. (Citations omitted.) "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." *Id.*

### II. Issues on Appeal

¶ 8 This appeal presents three issues concerning (1) Lessee's right to re-enter the well bore, if any, pursuant to the order of the Corporation Commission, as against (2) Landowners' ownership of the casing and wellbore, and (3) their right to compensation, if any, for its use. From our review of the authorities, it appears the first and second issues have been settled, but the third has not.

### A. Ownership of the Casing and Wellbore

#### 1. Casing

¶ 9 "[C]asing in wells, derricks, engines and other machinery placed upon the land by the lessee for developing and operating the land for oil and gas purposes are considered trade fixtures." *Garr–Woolley v. Martin*, 1978 OK CIV APP 11, ¶ 10, 579 P.2d 206, 208–209; *Luttrell v. Parker Drilling Co.*, 1959 OK 29, ¶ 11, 341 P.2d 244, 246. Upon expiration of a mineral lease, the lessee is granted a reasonable time to remove the casing, equipment and machinery used in the production of oil or gas. *Garr–Woolley*, 1978 OK CIV APP 11, ¶¶ 10–11, 579 P.2d at 208–209; *Luttrell*, 1959 OK 29, ¶ 11, 341 P.2d at 246. See also, 4 Kuntz, A TREATISE ON THE LAW OF OIL AND GAS, § 50.3 (Matthew Bender 1972); 4 Williams & Meyers, OIL AND GAS LAW, § 674.2 (Matthew Bender 2007).

¶ 10 However, "oil and gas equipment left on the landowner's property for an unreasonable length of time after the termination of the lease will become the landowner's property." *Garr–Woolley*, 1978 OK CIV APP 11, ¶ 12, 579 P.2d 206, 208–209. "Oil well casings are trade fixtures," and, because "[c]asings, as objects 'imbedded' in land, are

1. *See,* Rule 13(h), Rules for District Courts, 12 O.S.2001, Ch. 2, App.; Ok.S.Ct.R. 1.36, 12 O.S. 2001, Ch. 15, App.

by statutory definition real property," "when the casing is not removed by the lessee within a reasonable time, it becomes property of the landowner." *Gutierrez v. Davis,* 618 F.2d 700, 702 (10th Cir.(Okla.) 1980).

¶ 11 The casing of the Theodore No. 1 well clearly became a part of the surface estate upon the lessee's failure to remove it within a reasonable time after plugging the Theodore No. 1 well in 1983. Landowners acquired the surface estate in 1989. As owners of the surface estate, Landowners now also own the casing of the Theodore No. 1 well as part of their surface estate.

### 2. Wellbore

¶ 12 "The owner of land in fee has the right to the surface and to everything permanently situated beneath or above it." 60 O.S.2001 § 64; *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority,* 1994 OK 20, ¶ 30, 896 P.2d 503, 515–516, fn. 83. In considering the issue of the ownership of an abandoned wellbore, the Oklahoma Supreme Court held over sixty-five years ago that the owner of the surface also owned an abandoned wellbore on the land. *Sunray Oil Co. v. Cortez Oil Co.,* 1941 OK 77, ¶ 30, 112 P.2d 792, 795. Landowners own the plugged and abandoned wellbore of the Theodore No. 1 well.

### B. Right to Use the Casing and Wellbore

¶ 13 In this appeal, Landowners first assert the Corporation Commission's order is entirely silent as to the use of the Theodore No. 1 casing, and consequently, grants no such rights to Lessee. Landowners secondly assert the Corporation Commission has no jurisdiction to determine title to real property, and the Permit to Re–Enter, allowing use of their casing, constitutes an impermissible determination of title. Landowners lastly assert Lessee's use of their casing, without their consent, amounts to an unconstitutional private taking of their property under the Oklahoma Constitution, art. II, § 23.

### 1. Taking of Private Property

¶ 14 Article II, § 23 of the Oklahoma Constitution absolutely proscribes the taking or damage of private property "for private use, with or without compensation, unless by consent of the owner." So, Landowners argue, absent their express consent, Lessee is not permitted to use any of Landowners' property in the course of its mineral exploration.

¶ 15 However, the owner of the surface has no standing to object to the unitized development of the underlying mineral resources. *Turley v. Flag–Redfern Oil Co.,* 1989 OK 144, 782 P.2d 130. The owner of the surface cannot prevent the drilling of a well at the site chosen by the operator and approved by the Corporation Commission. *See, McDaniel v. Moyer,* 1983 OK 39, ¶ 13, 662 P.2d 309, 313.

¶ 16 Ultimately, the regulation of the unitized management and development of oil and gas properties within this state constitutes a valid exercise of the state's police powers, and orders of the Corporation Commission dictating the unitized management and development of oil and gas properties within this state, commensurate with state law, do not violate the Oklahoma constitutional provisions relating to due process or the taking of private property. *Jones Oil Co. v. Corporation Commission,* 1963 OK 116, 382 P.2d 751; *Woody v. State Corp. Com'n,* 1954 OK 14, 265 P.2d 1102; *Palmer Oil Corp. v. Phillips Petroleum Co.,* 1951 OK 78, 231 P.2d 997.

¶ 17 Consequently, Landowners have not suffered, and will not suffer, any unconstitutional taking of their property as a result of Lessee's mineral operations. The parties do not dispute that the location described in the Permit to Re–Enter describes the Theodore No. 1 well. The well is located at a permitted place within the drilling and spacing unit, and Landowners cannot prevent Lessee's re-entry into the abandoned wellbore pursuant to the Permit to Re–Enter granted by the Corporation Commission. The Permit to Re–Enter does not determine title to Landowners' property, and expressly disclaims any adjudication of surface damages.

### C. Right to Compensation

¶ 18 That said, however, the question of Landowners' right to compensation

for use of the wellbore and casing remains unsettled. *See, McDaniel*, 1983 OK 39, ¶ 16, 662 P.2d at 313, fn. 13.[2] As we hereinafter explain, we hold Landowners' right to compensation for use of the abandoned wellbore should be determined under the Surface Damages Act, but their right to compensation for use of the casing should be measured by the rental value of the casing.

### 1. Use of the Surface Estate

¶ 19 At common law, and prior to the adoption of the Surface Damages Act, 52 O.S. Supp.1982 §§ 318.2–318.9 [3]:

> [I]n the absence of a contractual provision in the oil and gas lease providing otherwise, an oil and gas operator was liable for surface damage only if such damage resulted from wanton or negligent operations or if the operations affected more than a reasonable area of the surface. In other words, the operator would not be liable for surface damage resulting from the "reasonable" use of the surface which was necessary to the oil and gas operations.

*Houck v. Hold Oil Corp.*, 1993 OK 166, ¶ 11, 867 P.2d 451, 456. (Citations omitted.) With the adoption of the SDA, the Oklahoma Legislature mandated the prompt payment of compensation of a surface owner whose land is taken for oil and gas exploration to balance the competing needs of the surface owners and owners of minerals:

> It cannot be said that the surface of the land constitutes a less vital resource to the State of Oklahoma than does the mineral wealth which underlies it. The surface supports development for business, industrial and residential purposes. It also supports our vital agricultural industry. The passage of the surface damages act guarantees that the development of [the oil and gas] industry is not undertaken at the expense of [our vital agricultural industry]

when the vitality of both is of great consequence to the well-being of our economy. In times when both the agricultural and oil and gas segments of our economy are suffering it is especially important that such legislation is enforced.

*Davis Oil Co. v. Cloud*, 1986 OK 73, ¶ 16, 766 P.2d 1347, 1351. *See also, YDF, Inc. v. Schlumar, Inc.*, 2006 OK 32, ¶ 10, 136 P.3d 656, 659.

¶ 20 The SDA constitutes the sole authority for the award of damages to the surface estate resulting from mineral operations. *Turley*, 1989 OK 144, ¶ 22, 782 P.2d at 135–136. Stated otherwise:

> [I]nsofar as a surface owner has a protected interest when an oil and gas operator enters to drill a well for oil and gas purposes, the Oklahoma Surface Damages Act, 52 O.S. §§ 318.2–318.9, provides an adequate remedy for any "taking" of the surface owner's interest.
>
> . . . .
>
> To the extent that the Oklahoma Surface Damages Act created a protected right for any "taking" of the surface owner's property, it simultaneously created an adequate remedy for said "taking."

*Turley v. Mewbourne Oil Co.*, 715 F.Supp. 1052, 1054, 1055 (W.D.Okla.1989).

### 2. Measure of Damages Under the Surface Damages Act

#### a. Wellbore

¶ 21 The SDA permits the recovery of damages "which the surface owner has sustained or will sustain by reason of entry upon the subject land and by reason of drilling or maintenance of oil or gas production on the subject tract of land." *Ward Petroleum Corp. v. Stewart*, 2003 OK 11, ¶ 6, 64 P.3d 1113, 1115. (Emphasis added.) "[T]he damage standard . . . under the Act is the

---

**2.** "The landowners' ownership of the bore hole has never been a controverted issue here. The real issue in dispute was whether the operator was entitled to an uncompensated use of the bore hole. That legal issue could not be litigated as a defense to an injunction suit absent some compelling equitable considerations. Short of an emergency, an injunction suit cannot be used to litigate title to property or property rights or for

the purpose of transferring possession from one party to another. *Montgomery v. Coleman–Nelson Gasoline Co.*, 130 Okl. 14, 264 P. 895 [1928]; *Mid–Continent Pipe Line Company v. Emerson*, Okl., 396 P.2d 734, 736 [1964]."

**3.** Eff. July 1, 1982.

diminution in the fair market value of the surface property resulting from the drilling and maintenance operations." *Id.; Davis Oil Co.,* 1986 OK 73, ¶ 22, 766 P.2d at 1352.

¶ 22 Under the SDA, Landowners are clearly entitled to recover damages for any temporary or permanent damage to their surface estate which they have sustained or will sustain by reason of the entry upon their property and the drilling or maintenance of an oil or gas well, measured by the diminution of the fair market value of the surface property resulting from those operations. The wellbore is part of Landowners' surface estate, and the compensation to which they may be entitled for use of the wellbore must be determined under the SDA, not by reference to the value of the wellbore to Lessee, but by the diminution of the surface estate's fair market value. The extent to which the fair market value of the surface estate is diminished by Lessee's re-entry is a question to be addressed in the SDA action pending between the parties.

### b. Casing

¶ 23 The measure of damages for use of the casing is different. The Texas courts measure recovery for the use of casing as the difference between the value of the casing in place less the cost of removal. *Fike v. Riddle,* 677 S.W.2d 722, 724 (Tex.App. 1984); *Eubank v. Twin Mountain Oil Corp.,* 406 S.W.2d 789, 792 (Tex.Civ.App.1966). The Wyoming Supreme Court has held that, when the owner of casing is prevented from removing his casing from a well, the owner of casing may be entitled to the reasonable rental value of the casing so long as the well remains capable of producing in paying quantities. *Champion Ventures, Inc. v. Dunn,* 593 P.2d 832, 834 (Wyo.1979).

¶ 24 Oklahoma uses the measure of rental value. In *Okmulgee Supply Corp. v. Anthis,* 1940 OK 428, 114 P.2d 451, the Oklahoma Supreme Court held that, because the removal of the casing would destroy the producing well, and the purchaser of the casing could not, under that circumstance, extract the casing, the owner of the casing was entitled, as a matter of equity, to the reasonable

rental value of the casing. 1940 OK 428, ¶ 8, 114 P.2d at 453.

¶ 25 Under these authorities, Oklahoma law clearly measures the value of casing in place as its reasonable rental value, not by its diminished market value as under the SDA. Landowners are consequently entitled to reasonable compensation for the use of the casing, measured by its reasonable rental value.

### III. Conclusion

¶ 26 On the issue of Landowners' claim to compensation for use of the casing and wellbore, the trial court denied Landowners' motion for summary judgment. In this, we hold the trial court erred. That part of the trial court's order is consequently REVERSED, and the cause REMANDED for further proceedings. In all other respects, the order of the trial court is AFFIRMED.

BELL, V.C.J., and MITCHELL, J., concur.